1
2
3
4
5
6
7
8

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

9
10

| In Re: | ) | |
|---|---|---|
| Alanna Ellis, | ) | Case no. 16-10066 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT TO DENY THE |
| Alanna Ellis, | ) | DEBTOR'S DISCHARGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States Trustee for claims against defendant Alanna Ellis (the "Defendant"),
asserts and alleges as follows:

## I.  PARTIES

1.      The plaintiff is the United States Trustee for Region 18, which includes the
Western District of Washington. The United States Trustee has standing to bring this action
under 11 U.S.C. §§ 307 and 727(c)(1).

2.      The Defendant is the debtor in the above-captioned chapter 7 bankruptcy case.

COMPLAINT TO DENY DISCHARGE - 1

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 17-01017-CMA    Doc 1    Filed 01/30/17    Ent. 01/30/17 13:23:40    Pg. 1 of 14

## II. JURISDICTION AND VENUE

3.    This is an adversary proceeding to deny the Defendant's discharge, brought pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, or in the alternative, to dismiss the Defendant's case with prejudice pursuant to § 707(b)(3)(A).

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

5.    The United States Trustee consents to entry of a final order and judgment by the Bankruptcy Court in this adversary proceeding. Fed. R. Bankr. P. 7008.

6.    Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III. FACTUAL ALLEGATIONS

A. The Defendant's History in Bankruptcy Court.

7.    On May 18, 2000, the Defendant, then "Alana G. Maria-Davidson," filed a petition under chapter 13, case no. 00-05056-TTG (the "First Case").

8.    The Defendant was represented in the First Case by attorney Bradley Ellis.

9.    The First Case was dismissed on August 3, 2000, for failure to file required information.

10.   On October 10, 2000, the Defendant, then "Alana Grace Maria-Davidson," filed a petition under chapter 7, case no. 00-09975-KAO (the "Second Case").

11.   The Defendant was represented in the Second Case Mr. Ellis.

12.   The Second Case was dismissed on February 20, 2001, for the Defendant's failure to pay the filing fee.

13.   On February 20, 2002, the Defendant, then "Alana Grace Maria-Davidson," filed a petition under chapter 7, case no. 02-12062-PHB (the "Third Case").

14.   The Defendant was represented in the Third Case by attorney Martin Snodgrass.

15.   A discharge was entered in the Third Case on July 21, 2004.

COMPLAINT TO DENY DISCHARGE - 2

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

16.     On July 24, 2009, the Defendant filed a petition under chapter 13, case no. 09-17341-MLB (the "Fourth Case").

17.     The Defendant was not represented by an attorney in the Fourth Case.

18.     The Fourth Case was converted to a chapter 11 case on October 2, 2009.

19.     On June 15, 2010, the 2009 Fourth Case was converted to case under chapter 7.

20.     On September 20, 2010, the United States Trustee filed a complaint against the Defendant seeking denial of discharge pursuant to 11 U.S.C. § 727(a)(8). The Court entered a stipulated order denying the Defendant's discharge on October 15, 2010.

21.     On July 16, 2014, the Defendant filed a petition under chapter 13 case, case no. 14-15364-TWD (the "Fifth Case").

22.     The Defendant was represented by attorney Lawrence Engle in the Fifth Case.

23.     The Defendant received four extensions of time to file schedules, statements, and a plan in the Fifth Case.

24.     The Fifth Case was dismissed on September 26, 2014, for failure to file information.

25.     On February 13, 2015, the Defendant filed another chapter 13 case, case no. 15-10852-TWD (the "Sixth Case").

26.     The Defendant was not represented by an attorney in the Sixth Case.

27.     The Sixth Case was dismissed on March 18, 2015, for the Defendant's failure to pay the filing fee and failure to file information.

B. The Chapter 11 Case.

28.     On January 8, 2016 (the "Petition Date"), the Defendant filed the instant chapter 11 case in the Western District of Washington, case no. 16-10066 (the "Chapter 11 Case").

29.     The petition filed in the Chapter 11 Case (the "Petition") indicates that the Defendant's debts are primarily consumer debts.

30.     The Defendant was represented by attorney Larry Feinstein in the Chapter 11 Case.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

31.     In conjunction with the Chapter 11 Case, the Defendant filed schedules of assets and liabilities (each an "Initial Schedule" and collectively, the "Initial Schedules"), and a statement of financial affairs (the "Initial SOFA").

32.     The Defendant signed the Initial Schedules and Initial SOFA under penalty of perjury as being true and correct.

33.     On February 12, 2016, the Defendant appeared and testified at the chapter 11 meeting of creditors (the "Chapter 11 Creditors' Meeting").

34.     At the Chapter 11 Creditors' Meeting, the Defendant testified that she read and signed the Initial Schedules and Initial SOFA filed before they were filed.

35.     At the Chapter 11 Creditors' Meeting, the Defendant testified that the information in the Initial Schedules and Initial SOFA was true and correct.

36.     At the Chapter 11 Creditors' Meeting, the Defendant testified that there were no errors or omissions in the Initial Schedules and Initial SOFA to bring to the United States Trustee's attention.

37.     On March 3, 2016, the Defendant filed an amendment to the Initial Schedule A/B (the "Amended Schedule A/B") and the Initial SOFA (the "Amended SOFA").

C. Conversion to Chapter 7.

38.     On April 27, 2016, the Court ordered the appointment of a trustee in the Chapter 11 Case.

39.     The United States Trustee appointed Kathryn Ellis to serve as the trustee in the Chapter 11 Case.

40.     On September 1, 2016, Kathryn Ellis filed a motion to convert the Chapter 11 Case to a case under chapter 7. An order converting the case was entered on September 21, 2016 (the "Chapter 7 Case").

41.     The Defendant is represented by Mr. Feinstein in the Chapter 7 Case.

42.     The United States Trustee appointed Kathryn Ellis to serve as the chapter 7 trustee (the "Trustee") in the Chapter 7 Case.

COMPLAINT TO DENY DISCHARGE - 4

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 17-01017-CMA    Doc 1    Filed 01/30/17    Ent. 01/30/17 13:23:40    Pg. 4 of 14

43.     On October 7, 2016, the Defendant filed her post-conversion schedules (each a "Post-Conversion Schedule" and collectively the "Post-Conversion Schedules") and SOFA (the "Post-Conversion SOFA").

44.     The Defendant signed the Post-Conversion Schedules and Post-Conversion SOFA under penalty of perjury as being true and correct.

45.     On October 18, 2016, the Defendant appeared and testified at the chapter 7 meeting of creditors (the "First Chapter 7 Creditors' Meeting").

46.     At the First Chapter 7 Creditors' Meeting, the Defendant testified that she read the Post-Conversion Schedules and Post-Conversion SOFA before she signed them.

47.     At the First Chapter 7 Creditors' Meeting, the Defendant testified that the information in the Initial Schedules, Amended Schedule A/B, Initial SOFA, and Amended SOFA was accurate.

48.     At the First Chapter 7 Creditors' Meeting, the Defendant testified that the information in the Post-Conversion Schedules and Post-Conversion SOFA was accurate.

49.     At the First Chapter 7 Creditors' Meeting, the Defendant testified that the Post-Conversion Schedules listed all of her assets and creditors.

50.     The Trustee continued the First Chapter 7 Creditors' Meeting because the Defendant failed to produce all documents requested by the Trustee.

51.     On November 15, 2016, the Defendant appeared and testified at the continued chapter 7 meeting of creditors (the "Continued Chapter 7 Creditors' Meeting").

D.  The Defendant's Nonfiling Spouse.

52.     The Defendant is married to Bradley Ellis (the "Nonfiling Spouse").

53.     The Defendant and the Nonfiling Spouse were married in 2002.

54.     The Defendant and the Nonfiling Spouse did not execute a prenuptial agreement.

55.     The Defendant and the Nonfiling Spouse did not execute a separate property agreement prior to their marriage.

COMPLAINT TO DENY DISCHARGE - 5

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 17-01017-CMA   Doc 1   Filed 01/30/17   Ent. 01/30/17 13:23:40   Pg. 5 of 14

1

2          56.    The Nonfiling Spouse is an attorney, formerly licensed in the State of

Washington.

3          57.    During the time he was licensed to practice law, the Nonfiling Spouse represented

4    debtors in bankruptcy, including the Defendant in the First Case and the Second Case.

5

6      F.   IPG Investments, LLC.

7          58.    The Defendant stated on Initial Schedule A/B that she is the 100% owner of IPG

Investments, LLC ("IPG Investments").

8          59.    IPG Investments is a mortgage brokerage firm which originates commercial

9    mortgage transactions.

10         60.    IPG Investments was formed after the Debtor and the Nonfiling Spouse married.

11         61.    Since 2007, IPG Investments has operated as a sole proprietorship.

12         62.    The Debtor admitted that IPG Investments is a "100% community asset." *See*

13   Post-Conversion Schedule A/B at Dkt #90 at p. 9.

14         63.    IPG Investments is liable for claims against the Defendant.

15         64.    As a sole proprietorship, there is no legal distinction between IPG Investments

16   and the Debtor.

17         65.    IPG Investments receives commissions and fees for loan origination services.

18         66.    In 2014, the Defendant and the Nonfiling Spouse reported gross income of

19   $225,110, and net income of $204,157, from IPG Investments on their joint tax return filed with

     the Internal Revenue Service.

20         67.    In 2015, the Defendant and the Nonfiling Spouse reported gross income of

21   $127,672, and net income of $108,430, from IPG Investments on their joint tax return filed with

22   the Internal Revenue Service.

23         68.    On a profit and loss statement for January 1, 2016, to July 11, 2016, provided by

24   the Defendant to the Trustee, IPG Investments reported total gross income in the amount of

25   $167,025, and net income of $164,765.

26

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

69. IPG Investments generated proceeds, product, offspring, rents, or profits (collectively, "Proceeds") after the Petition Date, and upon information and belief, continues to generate Proceeds.

70. All Proceeds from IPG Investments were property of the Defendant's chapter 11 bankruptcy estate.

71. All Proceeds from IPG Investments are property of the Defendant's chapter 7 bankruptcy estate, except the earnings from postpetition services performed by the Defendant for IPG Investments.

72. According to Post-Conversion Schedule A/B, the Defendant receives 10 to 15 percent of the total income earned by IPG Investments, and the Non-Filing Spouse receives 85 to 90 percent.

73. At the Continued Chapter 7 Creditors' Meeting, the Defendant testified that she receives earnings for services performed for IPG Investments, including underwriting, ordering title reports, and preparing loan packages.

74. On November 7, 2015, the Defendant, on behalf of IPG Investments, executed an engagement agreement with Cave B Inn LLC.

75. At the Continued Chapter 7 Creditors' Meeting, the Defendant testified that IPG Investments does not own a bank account.

76. On the Petition Date, the Proceeds generated by IPG Investments were not segregated in any bank account.

77. In the Monthly Financial Report for May filed in the Chapter 11 Case, the Defendant stated that commissions received from IPG Investments were normally deposited into her personal bank account(s), or the Nonfiling Spouse's personal bank account(s).

78. The Defendant failed to disclose the Proceeds generated by IPG Investments in each of the Monthly Financial Reports in the Chapter 11 Case, including without limitation, the February 2016 Monthly Financial Report and the August 2016 Monthly Financial Report.

79. The Defendant certified each Monthly Financial under penalty of perjury.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

E.  Smokiam RV Resort LLC

80.     The Nonfiling Spouse formed Smokiam RV Resort LLC ("Smokiam RV Resort")
on or around May 30, 2014.

81.     On the Petition Date, the Nonfiling Spouse was the sole member of Smokiam RV
Resort.

82.     The Nonfiling Spouse is the sole manager of Smokiam RV Resort.

83.     On or around September 15, 2014, Smokiam RV Resort purchased real property
located on Soap Lake for $865,000.

84.     On the Petition Date, Smokiam RV Resort LLC was the named account holder on
a financial account at Umpqua Bank ending in 8929 (the "Smokiam Business Account").

85.     The Defendant is a signatory on the Smokiam Business Account.

86.     The Defendant does the QuickBooks for Smokiam RV Resort.

87.     At the First Chapter 7 Creditors' Meeting, the Defendant testified that she pays
the bills for Smokiam RV Resort.

88.     At the Chapter 11 Creditors' Meeting, the Defendant testified that the Smokiam
Business Account was not used for personal or family expenses.

89.     Following the Petition Date, the Defendant's personal, family, and/or household
expenses were routinely paid from the Smokiam Business Account.

90.     Both before and after the Petition Date, Smokiam RV Resort received substantial
transfers of Proceeds from IPG Investments.

G.  Prepetition Transfers to the Smokiam Business Account.

91.     Prior to the Petition Date, the Defendant transferred or caused to be transferred to
the Smokiam Business Account Proceeds generated by IPG Investments (the "Prepetition
Transfers").

92.     The Prepetition Transfers identified in paragraph 88 include, without limitation,
the following:

A.   On April 29, 2014, the Defendant transmitted a demand letter on behalf of

COMPLAINT TO DENY DISCHARGE - 8

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 17-01017-CMA    Doc 1    Filed 01/30/17    Ent. 01/30/17 13:23:40    Pg. 8 of 14

IPG Investments to First American (the "First American Demand Letter") instructing First American to submit $25,400 to the Smokiam Business Account as payment to IPG Investments for brokerage commissions due for loan origination services (the "$25,400 Transfer").

B. On or around August 4, 2015, the Defendant transferred or caused to be transferred $40,380 from IPG Investments to the Smokiam Business Account (the "$40,380 Transfer").

93. The Defendant failed to disclose the Prepetition Transfers on the Initial SOFA.

94. The Defendant failed to disclose the Prepetition Transfers on the Amended SOFA.

95. The Defendant failed to disclose the Prepetition Transfers on the Post-Conversion SOFA.

H. Postpetition Transfers to the Smokiam Business Account.

96. Following the Petition Date, the Defendant transferred or caused to be transferred to the Smokiam Business Account Proceeds generated by IPG Investments (the "Postpetition Transfers").

97. The Postpetition Transfers identified in paragraph 90 include, without limitation, the following:

A. On or around February 23, 2016, the Defendant transferred or caused to be transferred $55,500 to the Smokiam Business Account (the "$55,500 Transfer").

B. On May 2, 2016, the Defendant transferred or caused to be transferred $25,400 to the Smokiam Business Account (the "$25,400 Transfer").

C. On May 17, 2016, the Defendant transmitted a demand letter on behalf of IPG Investments to Mariners Escrow (the "Mariners Escrow Demand Letter") instructing Mariners Escrow to submit as payment to IPG Investments the amount of $65,800 for brokerage commissions due for loan

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

origination services. On or around May 26, 2016, Mariners Escrow transferred $65,800 to the Smokiam Business Account (the "$65,800 Transfer").

D. On or around May 19, 2016, the Defendant transferred or caused to be transferred $2,570 to the Smokiam Business Account (the "$2,570 Transfer").

E. On or around July 26, 2016, the Defendant transferred or caused to be transferred approximately $13,220 to the Smokiam Business Account (the "$13,220 Transfer").

F. On or around August 18, 2016, the Defendant transferred or caused to be transferred approximately $11,811 to the Smokiam Business Account (the $11,811 Transfer").

98.     The Postpetition Transfers were not made in the ordinary course of the Defendant's business.

99.     The Postpetition Transfers were made without the knowledge or consent of the Trustee.

100.     The Defendant did not disclose the $25,400 Transfer, $65,800 Transfer, and the $2,570 Transfer to the Trustee until August 5, 2016, as part of the late filed May Report in the Chapter 11 Case.

101.     In response to the May Report, on August 17, 2016, the Trustee demanded that the Defendant disgorge the $25,400 Transfer, $65,800 Transfer, and the $2,570 Transfer to the estate.

102.     To date, the Defendant has refused to return the $25,400 Transfer, $65,800 Transfer, and the $2,570 Transfer to the estate.

I.   The Trustee Subpoena.

103.     On November 29, 2016, the Trustee served the Defendant with a subpoena (the "Subpoena").

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

104. The Subpoena required the Defendant to produce all documentation pertaining to any commissions or other payments made to IPG Investments, the Defendant, or the Nonfiling Spouse from January 1, 2016, to date including but not limited to "any letters or instructions regarding the transfer of funds, any written agreements or documentation regarding the basis for the receipt of the same, closing statements from any real estate transactions, etc."

105. The Subpoena required the Defendant to produce all documentation pertaining to the Post-Petition Transfers, including but not limited to any written agreement for the receipt of the Transfers by Smokiam RV Resort, as well as "closing statements, etc."

106. According to a letter dated December 13, 2016, from the Defendant and the Nonfiling Spouse to the Trustee in response to the Subpoena (the "Letter"), there were total Proceeds of $193,236 generated by IPG Investments from February 1, 2016, through July 31, 2016.

107. According to the Post-Conversion SOFA, from January 1, 2016, until October 4, 2016, the Defendant and he Nonfiling Spouse received total income from employment or from operating a business in the total amount of $146,790, comprised of $30,229 to the Defendant and $116,561.43 to the Nonfiling Spouse.

108. The income reflected in the Letter exceeds the income disclosed by the Defendant on the Post-Conversion SOFA.

109. According the Letter, $174,301 of the total Proceeds generated by IPG Investments from February 1, 2016, through July 31, 2016, were deposited into the Smokiam Business Account as "short term loans."

110. The Defendant failed to produce to the Trustee complete settlement statements, escrow instructions, closing statements, or loan agreements for each of the Post-Petition Transfers.

111. The Defendant failed to produce documents in response to the Subpoena from which her financial condition or business actions can be ascertained.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

# FIRST CLAIM FOR RELIEF
## 11 U.S.C. § 727(a)(2)(A)
### (Concealment and/or Transfer of Prepetition Assets)

1. Paragraphs 6 through 111 are incorporated.

2. The Defendant, with intent to hinder, delay, or defraud a creditor or the Trustee transferred, removed, destroyed, or concealed, or permitted to be transferred, removed, destroyed, or concealed, property of the Defendant within one year before the date of the Petition Date. The transfers or concealments relate to, without limitation, the $40,380 Transfer.

# SECOND CLAIM FOR RELIEF
## 11 U.S.C. § 727(a)(2)(B)
### (Concealment and/or Transfer of Postpetition Assets)

3. Paragraphs 6 through 111 are incorporated.

4. The Defendant, with intent to hinder, delay, or defraud a creditor or the Trustee transferred, removed, destroyed, or concealed, or permitted to be transferred, removed, destroyed, or concealed, property of the Defendant after the Petition Date. The transfers or concealments relate to, without limitation: (a) the $55,500 Transfer; (b) the $25,400 Transfer; (c) the $2,570 Transfer; (d) the $65,800 Transfer; (e) the $13,220 Transfer; and (f) the $11,811 Transfer.

# THIRD CLAIM FOR RELIEF
## 11 U.S.C. § 727(a)(3)
### (Inadequate Records)

5. Paragraphs 6 through 111 are incorporated.

6. The Defendant has destroyed, or failed to keep or preserve, documents, records and papers from which the Defendant's business transactions and financial condition might be ascertained, specifically with regard to, without limitation: (a) total Proceeds generated by IPG Investments from January 1, 2016, through November 28, 2016; and (b) transfers, and/or loans made by the Defendant, the Nonfiling Spouse, and/or IPG Investments to Smokiam RV Resort from January 1, 2016, through November 28, 2016.

7. The Defendant's acts or failures to act were not justified under all the circumstances of the case.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

## FOURTH CLAIM FOR RELIEF
### 11 U.S.C. § 727(a)(4)(A)
#### (False Oath)

8. Paragraphs 6 through 111 are incorporated.

9. The Defendant knowingly failed to disclose material information in the Initial SOFA and Amended SOFA, without limitation, the Prepetition Transfers.

10. The Defendant knowingly failed to disclose material information in the Post-Conversion SOFA including, without limitation: (a) the Prepetition Transfers; and (b) income received by the Debtor and the Nonfiling Spouse from January 1, 2016, through October 4, 2016.

11. The Defendant signed the Initial SOFA, Amended SOFA, and Post-Conversion SOFA under penalty of perjury when she knew they were materially false.

12. The Defendant knowingly testified falsely at the Chapter 11 Creditors' Meeting when she testified that: (a) the Initial SOFA was accurate and complete; and (b) no personal or family expenses were paid from the Smokiam Business Account.

13. The Defendant knowingly testified falsely at the First Chapter 7 Creditors' Meeting when she testified that the Initial SOFA, Amended SOFA, and Post-Conversion SOFA were accurate and complete.

14. The Defendant knowingly made false oaths in the Monthly Financial Reports, including, without limitation, that: (a) total receipts for the month of February 2016 were $12,985; (b) total receipts for the month of August 2016 were $8,060.26; and (c) proceeds generated by IPG Investments were normally deposited into her personal bank account(s), or the Nonfiling Spouse's personal bank account(s).

15. The false oaths relate to material facts.

16. The false oaths were made with fraudulent intent.

17. The false oaths were made in or in connection with the case.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

## FIFTH CLAIM FOR RELIEF
11 U.S.C. §§ 349(a) and 707(b)(3)
(Dismissal with Prejudice)

18.     Paragraphs 6 through 111 are incorporated.

19.     The Defendant has engaged in egregious and bad faith misconduct for years with regard to the bankruptcy system.

20.     The Defendant has engaged in egregious and bad faith misconduct in the Chapter 11 Case.

21.     The Petition was filed in bad faith.

22.     The totality of the circumstances of the Defendant's financial situation demonstrates abuse.

23.     It would be an abuse of chapter 7 if the Defendant was allowed to receive a discharge.

24.     Cause exists to dismiss the Chapter 7 Case.

25.     Dismissal with prejudice is appropriate under the facts and circumstances.

The United States Trustee prays for relief as follows:

A.     That the Court enter a judgment denying the discharge of the Defendant pursuant to 11 U.S.C. §§ 707(b)(3)(A), 727(a)(2), (a)(3), and (a)(4) and

B.     For such other and further relief as the Court deems just and equitable.

DATE: January 30, 2017.

Respectfully submitted,

Gail Brehm Geiger
Acting U.S. Trustee for Region 18

By:     /s/ Sarah R. Flynn
        Sarah R. Flynn, NCBA #42829
        Attorney for United States Trustee

COMPLAINT TO DENY DISCHARGE - 14

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 17-01017-CMA     Doc 1     Filed 01/30/17     Ent. 01/30/17 13:23:40     Pg. 14 of 14